```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                       WESTERN DIVISION


EAGLE CAPITAL CORPORATION                                PLAINTIFF

VS.                         CIVIL ACTION NO. 5:10-cv-99(DCB)(RHW)

MUNLAKE CONTRACTORS, INC.;
BERKLEY REGIONAL INSURANCE COMPANY;
ALCORN STATE UNIVERSITY EDUCATIONAL
BUILDING CORPORATION; ALCORN STATE
UNIVERSITY; BRANTLEY DEVELOPMENTS, LLC;
AND SANDRA JEAN BRANTLEY, INDIVIDUALLY                  DEFENDANTS
```

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on defendants Brantley Developments, LLC ("Brantley Developments"), and Sandra Jean Brantley's motion to remand **(docket entry 6)**, joined in by plaintiff Eagle Capital Corporation ("Eagle Capital") (docket entries 8 and 9). A response was filed by defendants Munlake Contractors, Inc. ("Munlake"), and Berkley Regional Insurance Company ("Berkley"). Having carefully considered the motion and response, the parties' memoranda and the applicable law, and being fully advised in the premises, the Court finds as follows:

### Procedural Background

The Complaint in this case was filed by Eagle Capital in the Circuit Court of Claiborne County, Mississippi. The case was removed to this Court by defendants Munlake and Berkley (collectively "the removing defendants"). Defendants Brantley Developments, Sandra Jean Brantley, Alcorn State University ("ASU"), and Alcorn State University Educational Building

Corporation ("ASUEBC") did not join in the notice of removal.

The notice of removal alleges the citizenship/residence of the parties as follows:

Plaintiff Eagle Capital is a corporation established under the laws of the State of Mississippi with its principal place of business in Mississippi.

Defendant Munlake is a corporation established under the laws of the State of Missouri with its principal place of business in Missouri.

Defendant Berkley is a corporation established under the laws of the State of Delaware with its principal place of business in Delaware.

Defendant ASU is a public institution of higher learning in the State of Mississippi.

Defendant ASUEBC is a non-profit corporation established under the laws of the State of Mississippi.

Defendant Brantley Developments is a limited liability company established under the laws of the State of Tennessee with its principal place of business in Tennessee.

Defendant Sandra Jean Brantley is an adult resident citizen of the State of Tennessee.  Notice of Removal, ¶¶ 2-8.  The Notice of Removal also states that defendants Brantley Developments and Sandra Jean Brantley do not consent to the removal of this action, and further alleges:

> For purposes of this removal, the consent of Brantley Developments and Brantley is not needed as Brantley Developments and Brantley should be realigned as party plaintiffs because their interest and position with respect to the other defendants are conterminous with those of the plaintiff, Eagle Capital, whose claim is derivative of their claim which Eagle Capital purchased. Realignment of the parties is an exception to the general rule that diversity is determined at the commencement of a civil action.

Notice of Removal, ¶ 13.

Defendants Brantley and Brantley Developments filed a timely motion to remand, objecting to the Notice of Removal as procedurally defective in that all defendants did not join in or consent to removal.  Motion to Remand, p.1 (citing Emrich v. Touche Ross & Company, 846 F.2d 1190, 1193 n.1 (9th Cir. 1988)("Ordinarily, under 28 U.S.C. § 1446(a), all defendants in a state action must join in the petition for removal, except for nominal, unknown or fraudulently jointed parties.")(citations omitted)); Balazik v. County of Dauphin, 44 F.3d 209, 213 (3rd Cir. 1994)("Failure of all defendants to join is a 'defect in removal procedure' within the meaning of § 1447(c), but is not deemed to be jurisdictional.")(citations omitted)).  Plaintiff Eagle Capital joined in the motion to remand.

The removing defendants responded to the motion to remand, contending that "defendants Brantley Developments and Brantley should be realigned as plaintiffs for removal purposes and, thus, their consent to removal was not necessary." Response to Motion to Remand, p. 1.  The removing defendants further state that

3

"[f]ederal courts have long recognized that the realignment of parties is appropriate in certain circumstances when determining diversity jurisdiction."  Response, p. 6 (citing Lowe v. Ingalls Shipbuilding, 723 F.2d 1173, 1178 (5th Cir. 1984)(It is the Court's duty to notice party alignment and apply proper alignment according to "the principal purpose of the suit and the primary and controlling matter in dispute.")).

### The Rule of Unanimity

Removal requires the consent of all co-defendants.  Doe v. Kerwood, 969 F.2d 165, 167 (5th Cir. 1992).  The right of removal is granted as follows:

> (a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending....

28 U.S.C. § 1441(a)(emphasis added).  The language "the defendant or the defendants" means that if there are multiple defendants, they must remove together.  Kerwood, 969 F.2d at 167; see also White v. White, 32 F.Supp.2d 890, 892 n.2 (W.D. La. 1998) (explaining that in interpreting the unanimity requirement of 28 U.S.C. § 1441(a), "courts have read these words to mean that if there is more than one defendant, then the defendants must act collectively to remove the case" (citing Kerwood, 969 F.2d at 167)).

4

However, the Fifth Circuit recognizes several exceptions to the rule of unanimity, which can be summarized as follows: (1) improperly or fraudulently joined defendants, see Jernigan v. Ashland Oil Inc., 989 F.2d 812, 815 (5th Cir. 2003); (2) nominal or formal parties, see Farias v. Bexar Cnty. Bd. of Tr. for Mental Health Mental Retardation Servs., 925 F.2d 866, 871 (5th Cir. 1991); and (3) defendants who have not been served by the time of removal, see Jones v. Houston Indep. Sch. Dist., 979 F.2d 1004, 1007 (5th Cir. 1992).

The Fifth Circuit has not recognized realignment of parties as an exception to the rule of unanimity.  The case cited by the removing defendants, Lowe v. Ingalls Shipbuilding, 723 F.2d 1173 (5th Cir. 1984), was a  declaratory judgment action originally brought in federal district court.  It involved neither the rule of unanimity nor removal.

In Roblez v. Ramos, 2001 WL 896942 (N.D. Tex. Aug. 1, 2001), the district court for the Northern District of Texas found unpersuasive a removing defendant's argument that the court should realign a non-consenting co-defendant with the plaintiff as an exception to the rule of unanimity.  Recognizing that, in cases filed originally in federal court, the district court has a duty to examine alignment of the parties in order to determine whether diversity of citizenship is complete, the court noted:

> The issue in those cases, therefore, was whether the plaintiffs could proceed in the federal forum they had

> chosen. The instant case, arriving in this court on the basis of removal, poses a different question, however: whether the <u>defendant's</u> choice of a federal forum trumps the plaintiff's usual right to select the forum.

Id. at *2 (emphasis in original). The court also noted that a case relied upon by the removing defendant, <u>Silgin v. New York Life Ins. Co.</u>, 854 F.Supp. 464 (S.D. Tex. 1994), in which the plaintiff's motion to remand was denied, was decided on the basis that the non-consenting defendant was a nominal party (not on the basis of realignment), and that nominal parties are not required to consent to removal. <u>Id.</u> at *2 n.1. <u>See</u> <u>also</u> <u>Washington v. Ernster</u>, 551 F.Supp.2d 568, 573-74 (E.D. Tex. 2007)(finding the rationale of <u>Roblez</u> persuasive, and finding, in the alternative, that removing defendant failed to show that realignment was appropriate); <u>Salge v. Buchanan</u>, 2007 WL 1521738, *4 n.5 (S.D. Tex. May 24, 2007)(same).

Federal courts in other jurisdictions have also treated removing defendants' arguments for realignment in terms of the nominal party exception to the rule of unanimity. <u>See</u> <u>Trustees of The Springs Transit Co. Employee's Ret. and Disab. Plan v. City of Colorado Springs</u>, 2010 WL 2507766, *1 (D. Colo. June 17, 2010)(rejecting removing defendant's argument that City of Colorado Springs should be realigned as a plaintiff for purposes of removal, upon finding that the City was not a nominal party); <u>Liebau v. Columbia Casualty Co.</u>, 176 F.Supp.2d 1236, 1243 (D. Kan. 2001)("The court concludes that where the defendants contesting removal are

realigned as plaintiffs, the situation is analogous to one involving ... nominal defendants.").

### Application of the Nominal Party Exception

This Court shall therefore analyze the removing defendants' objection to remand in terms of the nominal party exception to the rule of unanimity. "To establish that non-removing parties are nominal parties, 'the removing party must show ... that there is no possibility that the plaintiff would be able to establish a cause of action against the non-removing defendants in state court.'" Farias, 925 F.2d at 871 (quoting B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. 1981)). In Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressmen and Assistants' Local 349, 427 F.2d 325 (5th Cir. 1970), the Fifth Circuit described nominal parties as those parties who are neither necessary nor indispensable to join in the action. Id. at 327. Tri-Cities established the following test for determining whether a defendant is a nominal party: "whether in the absence of the [defendant], the Court can enter a final judgment consistent with equity and good conscience which would not be in any way unfair or inequitable to the plaintiff." Id. (quoting Stonybrook Tenants Assoc., Inc. v. Alpert, 194 F.Supp. 552, 559 (D. Conn. 1961)). "The bottom line concern in determining a nominal party is whether the plaintiff can establish a cause of action against the nonremoving defendant in state court." Farias, 925 F.2d at 872.

7

"The burden of establishing federal jurisdiction is on the party seeking removal." HDNet MMA 2008 LLC v. Zuffa, LLC, 2008 WL 958067, *2 (N.D. Tex. April 9, 2008)(citations omitted). "Removal jurisdiction must be strictly construed ... because it 'implicates important federalism concerns.'" Id. (quoting Frank v. Bear Stearns & Co., 128 F.3d 919, 922 (5th Cir. 1977))(additional citations omitted). "Furthermore, 'any doubts concerning removal must be resolved against removal and in favor of remanding the case back to state court.'" Id. (quoting Cross v. Bankers Multiple Line Ins. Co., 810 F.Supp. 748, 750 (N.D. Tex. 1992)(additional citations omitted)).

> Typically, whether an action should be remanded to state court must be resolved by reference to the plaintiff's pleading at the time of removal. State of Texas v. Alliance Employee Leasing Corp., 797 F.Supp. 542, 544 (N.D. Tex. 1992). If the court can make this determination by reference to the plaintiff's complaint alone, the court need not go further. However, should a district court need to go beyond the pleadings to assess the propriety of removal, it may do so. Id.

HDNet MMA 2008 LLC v. Zuffa, LLC, 2008 WL 958067 at *3.

The case sub judice arises out of a series of contracts for the construction of buildings on the Alcorn State University campus in Lorman, Mississippi. On September 14, 2009, Brantley Developments entered into a subcontract agreement with Munlake, the general contractor, whereby Brantley Developments agreed to provide labor, materials, and equipment to Munlake in furtherance of Munlake's contract with Alcorn. According to the Complaint, on

8

November 3, 2009, Brantley Developments and Eagle Capital entered into a Factoring and Security Agreement, whereby Eagle Capital agreed to purchase and Brantley Developments agreed to assign various invoices and/or receivables. Complaint, p. 6. Also on that date, P. Bardo Brantley[1] and Sandra Jean Brantley executed an Unconditional and Continuing Guaranty by an Individual, rendering them personally liable to Eagle Capital for any default under the Agreements. Complaint, p. 7.

On November 3, 2009, Brantley Developments issued Invoice # 100709 to Munlake, in the amount of $612,206, for work completed prior to that date. Prior to its purchase of the invoice, Eagle Capital submitted an Invoice Acceptance Form to Munlake for Invoice # 100709. Complaint, p. 7. The Invoice Acceptance Form requested that Munlake confirm completion and acceptance of the work performed by Brantley Developments, confirm that the stated invoice amount was correct and would be paid in accordance with Eagle Capital's terms, and confirm that the invoice amount would be paid in full without deductions, claims or offsets. The Invoice Acceptance Form for Invoice # 100709 was executed by Munlake on or about November 6, 2009. Complaint, p. 7. However, prior to executing the Form, Munlake altered its terms. Complaint, pp. 7-8. Eagle Capital subsequently contacted Munlake on numerous occasions

---

[1] P. Bardo Brantley is not named as a defendant in the style of the plaintiff's Complaint, nor is he mentioned in the "Parties" section of the Complaint.

to determine the status of payment, and was told each time that payment by ASUEBC had not been made to Munlake. Complaint, pp. 8-9. Finally, on December 31, 2009, Eagle Capital was told by Munlake that Brantley Developments was believed to be in the process of filing bankruptcy. Eagle Capital contacted Brantley Developments and was told that Brantley Developments had not filed bankruptcy and was working toward completing its construction contract with Munlake. Complaint, p. 9. Eagle Capital made written demand for payment of Invoice # 100709 upon Munlake and Brantley Developments, both of whom failed and/or refused to tender payment. Complaint, p. 9. Demand was also made upon Berkley pursuant to a Payment Bond issued by Berkley to Munlake, but was denied by letter of January 19, 2010. Complaint, p. 10.

Eagle Capital further alleges that Munlake knowingly circumvented the rights and interests of Eagle Capital by tendering certain other payments due under the applicable construction contract to Brantley Developments, specifically an advance in the amount of $375,000 which was paid directly to Brantley Developments. Complaint, p. 10.

Eagle Capital asserts a claim of breach of contract against Brantley Developments, stating that Brantley Developments represented and warranted that Invoice # 100709 was properly due and payable and not subject to any dispute, offset or other claim. Complaint, p. 13. The plaintiff further asserts that a dispute by

10

Munlake concerning the performance by Brantley Developments constitutes an act of "default" under the Factoring Agreement, and renders Brantley Developments in default and liable for the invoice amount. Eagle Capital also claims the default renders Sandra Jean Brantley personally liable pursuant to her Unconditional and Continuing Guaranty by an Individual. Complaint, p. 13. The Complaint seeks a judgment jointly against Brantley Developments, Sandra Jean Brantley, and Munlake for $612,206.70. Complaint, pp. 15-16.

In their response to the motion to remand, the removing defendants contend that Brantley Developments and Brantley are not adverse to Eagle Capital, and that Eagle Capital's claims against Munlake and Berkley are derivative of the claims it purchased from Brantley Developments. Response, pp. 6-7. In rebuttal, the Brantley defendants show that they are being sued by Eagle Capital for the invoice amount, pursuant to the factoring agreement. Eagle Capital's complaint asserts that under the terms of the agreement, Munlake's dispute with Brantley Developments over the invoice constitutes an act of "default" and a material breach of the agreement by Brantley Developments, rendering Brantley Developments liable to Eagle Capital for the invoice amount. Reply Brief, pp. 1-2. In addition, Eagle Capital seeks to hold Sandra Jean Brantley liable on her personal guaranty. Reply Brief, p. 1.

"Factoring" is "[t]he buying of accounts receivable at a

discount. The price is discounted because the factor (who buys them) assumes the risk of delay in collection and loss on the accounts receivable." Black's Law Dictionary 631 (8th ed. 2004). The Factoring and Security Agreement ("Agreement"), entered into by Eagle Capital ("Purchaser") and Brantley Developments ("Seller"), generally provides that Purchaser assumes the risk and that the accounts are purchased on a non-recourse basis (Agreement, ¶ 2.1.3). However, there are a number of exceptions:

> 7. **Repurchase Of Accounts**. Purchaser may require that Seller repurchase, by payment of the then unpaid Face Amount thereof, together with any unpaid fees relating to the Purchased Account on demand, or, at Purchaser's option, by Purchaser's charge to the Reserve Account:
>
> 7.1. Any Purchased Account, the payment of which has been disputed in whole or in part by the Payor or the Account Debtor obligated thereon, Purchaser being under no obligation to determine the bona fides of such dispute;
>
> 7.2. Any Purchased Account regarding which Seller has breached any warranty as set forth in the Section 13.4.
>
> 7.3. All Purchased Accounts upon the occurrence of an Event of Default, or upon the termination date of this Agreement; ...
>
> . . .

Agreement, ¶ 7.

> 11.6. Notwithstanding Seller's obligation to pay the Misdirected Payment Fee, Seller shall hold in safekeeping as property of Purchaser and shall pay to Purchaser on the next banking day following the date of receipt by the Seller, the amount of any check or form of payment received by Seller on account of a Purchased Account. ...

Agreement, ¶ 11.6.

> 13. **Representation and Warranties**. Seller represents and warrants that:
>
> 13.4.   The Purchased Accounts are and will remain:
>
> 13.4.1.   Bona fide existing obligations created by the sale and delivery of goods or the rendition of services in the ordinary course of Seller's business;
>
> 13.4.2.   Unconditionally owed and will be paid to Purchaser without defenses, disputes, offsets, counterclaims, or rights of return or cancellation;
>
> . . .

Agreement, ¶ 13.

> 16. **Default**.
>
> 16.1.   **Events of Default**.  The following events will constitute an Event of Default hereunder: (a) Seller defaults in the payment of any Obligations or in the performance of any covenant or any other provision hereof or of any other agreement now or hereafter entered into with Purchaser, or any warranty or representation contained herein proves to be false in any way, howsoever minor, ... (d) Purchaser for any reason, in good faith, deems itself insecure with respect to the prospect of repayment or performance of the Obligations.
>
> 16.2.   **Effect of Default**.  Upon the occurrence of any Event of Default, in addition to any rights Purchaser has under this Agreement or applicable law, Purchaser may immediately terminate this Agreement, at which time all Obligations shall immediately become due and payable without notice.

Agreement, ¶ 16.

In addition, the Unconditional and Continuing Guaranty by an Individual ("Guaranty") between Eagle Capital ("Factor") and P. Bardo Brantley and Sandra Jean Brantley (collectively "Guarantor") provides, in part:

> 1. <u>Guaranty</u>.  Guarantor hereby absolutely, irrevocably and unconditionally guarantees, jointly and severally, to the Factor, its successors, transferees and assigns, the punctual and full payment when due of all obligations of the Seller to the Factor under the Factoring Agreement or under the Security Agreement (as defined in the Factoring Agreement) as well as all other liabilities and obligations of the Seller to the Factor of every type and nature whatsoever ...
>
> . . .

Guaranty, ¶ 1.

The Agreement and Guaranty provide a sufficient basis for the claims made by Eagle Capital against Bentley Developments and Sandra Jean Brantley.  According to the Complaint, once Munlake began to dispute the account, Brantley Developments was in breach of its warranty that the account was "[u]nconditionally owed and [would] be paid to Purchaser without defenses, disputes, offsets, counterclaims, or rights of return or cancellation." Complaint, p. 13; Agreement, ¶ 13.4.2.  The Complaint alleges that the breach constituted an act of "default," rendering Brantley Developments as well as Sandra Jean Brantley liable to the plaintiff. Complaint, p. 13; Agreement, ¶ 16.  The Court therefore finds that the Complaint establishes a cause of action against the Brantley defendants.  The Court further finds, based on the present record, that a final judgment could not be entered, consistent with equity and good conscience, which would be fair and equitable to the plaintiff, in the absence of the Brantley defendants.  The Brantley defendants are therefore not nominal parties.

<u>Realignment of Parties</u>

In the event the Fifth Circuit would recognize an exception to the rule of unanimity for realignment of parties, the Court also finds that the parties should not be realigned. In addressing the proper alignment of parties, the Court must consider "the principal purpose of the suit and the primary and controlling matter in dispute." <u>Indemnity Ins. Co. of North America v. First Nat. Bank at Winter Park, Fla.</u>, 351 F.2d 519, 522 (5th Cir. 1965)(citing <u>City of Indianapolis v. Chase National Bank</u>, 314 U.S. 63, 72 (1965)). As the Supreme Court has explained:

> It is our duty, as it is that of the lower federal courts, to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." ... Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary "collision of interest," ... exits, is therefore not to be determined by mechanical rules. It must be ascertained from the "principal purpose of the suit," ... and the "primary and controlling matter in dispute."

<u>City of Indianapolis</u>, 314 U.S. at 70 (citations omitted).

From <u>City of Indianapolis</u>, there have developed two similar but distinct tests for determining whether realignment is necessary. The Third, Fourth, Fifth, Sixth, Ninth and Eleventh Circuits, reading <u>City of Indianapolis</u> literally, have adopted the "principal purpose" or "primary issue" test, in which a court must first identify the primary issue in controversy, and then determine whether a real dispute exists between opposing parties over that issue. See <u>United States Fidelity and Guaranty Company v. A & S</u>

Manufacturing Co., Inc., 839 F.Supp. 347, 349 (D. Md. 1993)(citing Zurn Industries, Inc. v. Acton Constr. Co., 847 F.2d 234 (5th Cir. 1988)(additional citations omitted)).  "If no alignment exists over the primary issue in dispute between the opposing parties, then realignment is proper." Id.[2]  The Fifth Circuit has also held that "[r]e-alignment of the parties is to be accomplished on the basis of the facts available at the commencement of the action," Scott v. Fancher, 369 F.2d 842, 844 (5th Cir. 1966), and that "[p]arties defendant will not be realigned if there remains in the case any issue as to which plaintiff needs some relief against such parties." Texas Pacific Coal & Oil Co. v. Mayfield, 152 F.2d 956, 957 (5th Cir. 1946).  The Supreme Court has instructed that the touchstone issue in resolving a motion for realignment is whether there is "antagonism" between the plaintiff and the defendant. Smith v. Sperling, 354 U.S. 91, 96 (1957).

Determination of the "primary and controlling matter in dispute" is based on the "plaintiff's principal purpose for filing its suit." Zurn Indus., 847 F.2d at 236.  "The determination of the 'primary and controlling matter in dispute' does not include

---

[2] The other test, adopted by the Second, Seventh, Eighth and Tenth Circuits, is the "substantial controversy" test. "According to that test, a court determines merely whether any substantial conflict exists between opposing parties, regardless of whether it is the primary issue in dispute or whether parties have a common position on equally important issues. ... As long as an actual, substantial conflict exists between opposing parties, realignment is not proper." United States Fidelity and Guaranty, 839 F.Supp. at 349 (citations omitted).

the cross-claims and counterclaims filed by the defendants." Id. at 237. The district court should determine whether there is a true "collision of interests" between opposing parties, in order to "insure that there is a bona fide dispute" between the parties. Id.

In this case, the primary issue in controversy is enforcement of the Factoring Agreement between Eagle Capital and Brantley Construction, with related issues being Munlake's obligations under the Invoice Acceptance Form and Sandra Jean Brantley's obligations under the Guaranty. There is antagonism between Eagle Capital and the Brantley defendants, and as the Court has already found, based on the present record, a fair and equitable final judgment could not be entered in the absence of the Brantley defendants. There is a "collision of interests" and genuine dispute between these parties, and realignment is inappropriate.

The Court therefore finds that the motion to remand is well taken. Because remand is proper in this case, the Court does not reach the removing defendants' argument that defendants ASU and ASUEBC were fraudulently joined. Accordingly,

IT IS HEREBY ORDERED that defendants Brantley Developments and Sandra Jean Brantley's motion to remand **(docket entry 6)** is GRANTED;

FURTHER ORDERED that plaintiff Eagle Capital's motion to stay **(docket entry 21)** is MOOT, inasmuch as a stay order was already in

place at the time the motion was made;

FURTHER ORDERED that a separate Order of Remand shall be entered of even date herewith, remanding this case to the Circuit Court of Claiborne County, Mississippi.  The remaining motions (defendants Munlake and Berkley's Motion to Change Venue, and defendants ASU and ASUEBC's Motion to Dismiss) are appropriately addressed by the state court.

SO ORDERED, this the 21st day of February, 2012.

/s/ David Bramlette
UNITED STATES DISTRICT JUDGE